IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

THE KEITH HARING FOUNDATION, INC.

    Plaintiff,

v.

COLORED THUMB CORP;
MICHAEL ROSEN and

    Defendants.

**Civil Action No.**

## COMPLAINT AND JURY DEMAND

Plaintiff The Keith Haring Foundation, Inc. ("Plaintiff" or "Haring Foundation"), by its attorneys, for its complaint against Defendants Colored Thumb Corp. and Michael Rosen (collectively, "Defendants") hereby alleges as follows:

### Nature of the Claims

1. This is an action for willful trademark infringement, trademark dilution, copyright infringement, false advertising, cybersquatting, and false designation of origin under 15 U.S.C. §§ 1114, 1125(a); 1125(c), 17 U.S.C. § 101 et seq..

2. The Haring Foundation is the successor-in-interest to and owner of the intellectual property of Keith Haring, the world famous artist. The Haring Foundation's mission is to sustain, expand, and protect the legacy of Keith Haring, his art, and his ideals. The Haring Foundation supports not-for-profit organizations that assist children, as well as organizations involved in education, research, and care related to AIDS. Despite his death in 1990, artwork by Keith Haring continues to be in high demand, and The Haring Foundation has an active licensing

1

program. There is also a strong market for Keith Haring's original works, which sell for very significant sums (depending on the size of the work, the medium, and other factors).

3. Defendants are currently promoting and conducting an art show that purports to feature original works by Keith Haring and his "friends." In fact, the overwhelming majority of the works are not by Keith Haring; they are counterfeits and/or infringements. Defendants are also offering these counterfeit and/or infringing works for sale, and may have already made sales of such works.

**Parties and Jurisdiction**

4. Plaintiff The Haring Foundation is a New York not-for-profit corporation located at 676 Broadway, New York, NY 10012.

5. On information and belief, Defendant Colored Thumb Corp. is a Florida corporation with an address of 21550 NE 38th Ave., Apt. 905, Miami FL 33180.

6. On information and belief, Defendant Michael Rosen is an individual residing in Florida, and the president of Colored Thumb Corp.

7. This Court has subject matter jurisdiction because: (a) this is a civil action arising under the Trademark and Copyright Laws of the United States, Sections 43(a) and (d) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) and 1125(c), and 17 U.S.C. § 101 et seq., jurisdiction being conferred in accordance with 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a); and (b) this Court has supplemental jurisdiction of Plaintiff's state and common law claims pursuant to 28 U.S.C. §§ 1367(a) and 1338(b).

8. This Court has personal jurisdiction over Defendants because Defendants conduct business in Florida and in this judicial district. In addition, Defendants have committed tortious

acts that have caused injury within the State and within this judicial district, and the claims alleged arise out of such tortious acts.

    9. Venue is proper in this District under 28 U.S.C. § 1391(b)).

## Facts Common to All Counts
## Haring's Intellectual Property

    10. Keith Haring (1958 – 1990) was an American artist and social activist. Between 1982 and 1989 he created more than 50 public works in dozens of cities around the world, including New York, Amsterdam, Paris, Phoenix, and in Berlin on the Berlin Wall at the Brandenburg Gate. His work has been the subject of several international retrospectives, including a 1997 retrospective at the Whitney Museum of Art in New York that traveled to several cities in North America (including Miami), major retrospectives in Europe (the largest of which opens next month at the Musee d'Art Moderne in Paris, France) and an exhibition of early work at the Brooklyn Museum (March – July, 2012).

    11. In 1989, Keith Haring established The Haring Foundation to ensure that his philanthropic legacy would continue indefinitely. In addition, before his death, he charged The Haring Foundation with maintaining and protecting his artistic legacy. The Haring Foundation maintains a collection of Keith Haring's art along with archives that facilitate historical research about him and the times and places in which he lived and worked.

    12. The Haring Foundation now owns virtually all intellectual property rights relating to Keith Haring. The Haring Foundation owns, *inter alia*, the following U.S. Trademark Registrations:

| Mark | Reg. No. | Goods/Services |
|---|---|---|
| K.Haring | 2,413,748 | Magnets; printed matter, namely art prints, posters and postcards; paper and plastic bags for packaging; tissue paper and cardboard boxes; tote bags and knapsacks; clothing, namely t-shirts, sweatshirts, caps and jackets. |
| KEITH HARING | 1,796,338 | Printed matter, namely art prints, posters, postcards, calendars, coloring books, children's books, picture books and museum catalogs; general purpose plastic pouches for packaging and storing assorted personal items; clothing, namely t-shirts, sweatshirts, caps, ties and jackets; ornamental novelty buttons |
| [dog design] | 1,755,211 | Jewelry; namely, earrings and pendants; Printed matter; namely, art prints, posters and postcards; Clothing; namely, t-shirts, sweatshirts, caps and jackets |
| [heart design] | 1,968,522 | Printed matter, namely art prints, postcards, note cards, posters, books, calendars, note books, stickers, children's books, coloring books, books in the field of art, and catalogs in the fields of art and clothing |

| | | |
|---|---|---|
| | 1,980,907 | Printed matter, namely art prints, postcards, note cards, posters, calendars, note books, stickers, children's books, coloring books and books in the field of art and catalogs in field of art and clothing |
| | 2,513,868 | Magnets; earrings, pendants, tie clips and cuff links; printed matter, namely art prints, posters, and post cards; clothing, namely t-shirts, sweatshirts, caps, jackets, and ties. |
| | 3,122,922 | Printed matter, namely, art prints, postcards, notecards, posters, stickers, books in the field of art, stationery, calendars, pencils, pens, pencil cases, writing instruments, journals with blank pages for writing, coloring books, binders |
| | 3,500,282 | Printed matter, namely, art prints, postcards, notecards, books and catalogs in the field of art, calendars, and notebooks; clothing, namely, t-shirts; Ornamental novelty pins and buttons |

| | | |
|---|---|---|
|  | 2,513,868 | Computer mousepads and cd cases;  Jewelry, namely, earrings, pendants, pins, bracelets and watches, cuff links, tie tacks; Printed matter, namely, art prints, postcards, notecards, posters, stickers, books in the field of art, stationery, calendars, coloring books, blank writing journals; pouches, namely, general purpose plastic pouches for packaging and storing assorted personal items, shopping bags made of plastic and paper; School bags, school satchels, backpacks, totebags, beach bags, sports bags, haversacks; umbrellas; Bowls, dishes, plates, serving platters, sugar bowls, cups, mugs, drinking glasses, drinking vessels, pitchers, tea and coffee services not of precious metal, teapots not of precious metal, creamers, vases; Bed sheets, pillow cases, pillow shams, duvet covers, bed blankets, bed covers, namely, bed spreads, comforters, bed blankets, dust ruffles; coverlets, shower curtains, towels, wash clothes, beach towels; Clothing, namely, t-shirts, tank tops, sweat shirts, sweat pants, shorts, hats, caps, jackets, scarves, raincoats, windbreakers, socks, shoes, boots, slippers, sandals, booties, belts, baby bibs not made of paper, rompers, and baby hooded sacks, namely, swaddling clothes and cloth infant wraps; Ornamental novelty pins and buttons; heat |

| | adhesive patches for decoration of textile articles; Toys, games, and play things, namely, yo yos, pull toys, dominoes, and playing cards |
|---|---|

13. In addition, The Haring Foundation owns numerous copyright registrations for Haring's artwork, including but not limited to:

| Title | Reg. No. |
|---|---|
| Birth Images | VA 1-444-701 |
| Front Cover Notebook | VA 1-444-727 |
| Coloring Books | VA 1-444-741 |
| Swatch Design – Oct. 1, '85 | VA 1-444-736 |
| [Logo against family violence] | VA 1-146-507 |
| Fusion Coin Collection Box | VA 1-146-509 |
| Voguer's Ball Chicago Logo 1989 | VA 1-146-515 |
| 3 Figures Holding Hands | VA 1-146-517 |
| [Snake] | VA 1-146-529 |
| Kingswood Cranbook | VA 1-146-532 |
| Montreaux Jazz Festival | VA 1-202-994 |
| TV With Wings | VA 1-202-999 |
| DJ 84 | VA 1-203-000 |
| DJ | VA 1-203-008 |
| Four Corner Figures | VA 1-203-009 |
| Dancing Dog | VA 1-203-010 |
| Baby Fabric Design | VA 1-203-506 |
| Fertility No. 5 | VA 1-212-369 |
| Summit Drawing | VA 1-444-726 |
| Front Cover Notebook | VA 1-444-727 |
| Possible Inserts | VA 1-099-586 |
| Pop Shop No. 6 | VA 1-156-670 |
| Pop Shop No. 5 | VA 1-156-669 |
| Running Man Logo | VA 1-146-524 |
| Artist Sketchbook Batman | VA 1-212-383 |

14. Since the mid-1980's, sales of artwork and licensed products bearing Keith Haring's signature and distinctive characters and elements have generated over $30 million. As a result of Keith Haring's renown, his legacy, and the playful, whimsical nature of his art, works containing

Keith Haring's signature and/or his distinctive characters and elements are immediately recognized by the public as originating with Keith Haring and/or authorized by Plaintiff. The Haring Foundation has strong and valuable trademark rights in Haring's signature and his distinctive characters and elements, and those marks have become famous within the meaning of 15 U.S.C. § 1125(c).

**Defendants' Actions**

15. Defendants are currently promoting and conducting an art show at the Moore Building in Miami, titled "Haring Miami." This show is subtitled "A Celebration of the Life & Art of Keith Haring." The show takes place from March 7-10, 2013, with a VIP opening on the evening of March 6. The web site that promotes the show, www.haringmiami.com, features an image of Keith Haring's artwork called "Retrospect" from 1989, which consists of multiple squares of different images.

16. The overwhelming majority of the works featured at the show are not genuine Haring artworks. Rather, they are fakes, forgeries, counterfeits, and/or infringements.

17. Defendants appear to acknowledge that not all of the works are genuine. At the very bottom of Defendants' website, there is the word "Disclaimer" that is clearly <u>not</u> designed to be noticeable. If a user clicks on this word, one is taken to a page that lists five general disclaimers about attendance at the show. The bottom of this page states:

> The art in this catalog may be by the artist Keith Haring or from his circle of friends. In that this is an expansive Exhibit, some of the artwork has not been submitted or examined by the Keith Haring Foundation for authenticity. Although every effort has been made to research the authenticity of the artwork, the promoter of this show, the owners and publisher of this catalog and curator cannot and does not guarantee the authenticity of the works. The works in this show are all from creditable private collections for

8

> your viewing pleasure and charitable educational experience. Some of the artwork in this catalog may be controversial. The show is meant to be an exploration of the work of Keith Haring and his friends and their influence on art. The pieces here may have been created by Keith Haring or his inner circle of collaborators. The promoters of Haring Miami, and the art owners, the curator and their agents are not affiliated with the Keith Haring Foundation or any entity related to their organization. Some of the works have been submitted and approved by the Foundation; some have been submitted and not authenticated by them with a caveat that they reserve their right to possibly authenticate the pieces upon further examination. Others have not been submitted.

18. This hidden "Disclaimer" fails to note that many of the works <u>have</u> been submitted to The Haring Foundation for authenticity – and were found to be inauthentic. Many works featured in Defendants' show that purport to be by Keith Haring were submitted to The Haring Foundation for authentication in 2007 by a collector named Liz Bilinski. The Haring Foundation advised Ms. Bilinski that the works were <u>not</u> authentic.

19. A representative of The Haring Foundation visited the show on opening night (March 6, 2013), and closely examined all the works in the exhibition. Out of the entire four floors of exhibited works, approximately 8 works were real works of Haring, including some prints, one acrylic on canvas, and one sculpture. Thus, the overwhelming majority of the works exhibited were works not created by Haring.

20. Additional works, including fake works, appear in the catalogue of the show. Every work appearing in the catalogue is fake except for two works. One appears on the interior cover of the catalogue entitled "*Growing*", and the other on the following page, which is untitled but consists of a detail from a canvas painting on a tent.

21. More than 200 people attended the opening of the show. Many in attendance believed that the art being displayed was by Keith Haring.

9

22. Some of the works at the show are for sale, and The Haring Foundation representative in attendance was told to email defendant Michael Rosen if he was interested in purchasing any of the works.  Two email addresses were provided to get in contact with Mr. Rosen.

23.  At the show, there are approximately 80 works of acrylic on canvas, some of which are quite large. All but one of the acrylics on canvas are fake.  Each of these works of art, if they were real Haring works, would be worth in the range of $500,000 to $1 million dollars.

24. Putting such works of art into the market will cause enormous and irreparable damage to The Haring Foundation.  Sales of poor quality works purporting to be authentic Keith Haring work depress the value of the work because it discredits the genius and innovative nature of the authentic artwork, people can buy the fake artwork cheaply and people also come to regard Haring's work as amateurish because of  poor quality fakes, such as are being shown at Haring Miami. Further, if not stopped, the market could be flooded with these fakes. And, once they hit the market, they will be extremely difficult if not impossible to track down and control.  They will defraud investors and collectors who, among other things, purchase authentic artworks from the Foundation's representatives.  It would destabilize the market for authentic Keith Haring artwork.  For example, if the approximately 80 acrylic works on canvas in the show were real Harings, their collective value would be more than $40 million. In fact, they are poor quality fake Harings and infringements of copyrighted and trademarked Haring artworks. Since there are so many, their entry into the market would certainly have an effect on the sale and the price of real Haring artwork.

25.  On information and belief, Defendants are promoting, displaying and/or selling works in the following categories:

    (i)    works that are outright forgeries, bearing a fake signature by Keith Haring and purporting to be works by Keith Haring, but are works of a third party;

    (ii)    works that do not bear a signature by Keith Haring but nonetheless are presented as works by Keith Haring, but are works of a third party;

    (iii)    works that may purport to be by a third party or are ambiguous as to the artist, but contain copied elements of Keith Haring's artwork.

### The Effects of Defendants' Unlawful Activities

26. Defendants' unauthorized and misleading use of Keith Haring's name, as well as the promotion, display, offering for sale, and sale of forgeries are unauthorized, infringing, and likely to confuse consumers.

27. On information and belief, Defendants' acts as described herein have already caused actual confusion among attendees of Defendants' show.

28. As a direct and proximate result of Defendants' actions, Plaintiff has suffered irreparable injury for which there is no adequate remedy at law and, absent injunctive relief, Plaintiff will continue to suffer irreparable injury for which there is no adequate remedy at law.

29. Defendants' foregoing actions have caused Plaintiffs to suffer damages, including but not limited to loss of goodwill.

30. On information and belief, Defendants' acts have been willful, wanton, intentional, and purposeful, or in reckless disregard of, or with callous indifference to, Plaintiff's rights.

31. Defendants' unauthorized and unlawful acts have resulted in unlawful profits to Defendants and have caused Defendants to be unjustly enriched.

### COUNT I
### Federal Trademark Infringement – 15 U.S.C. § 1114

32. Plaintiff realleges the allegations of Paragraphs 1 through 31 of this Complaint as though fully set forth herein.

11

33. Defendants' use of the marks KEITH HARING and multiple other registered trademarks of Haring's images belonging to Plaintiff in connection with the promotion, display, offer for sale, and sale of works that do not originate with Keith Haring is likely to cause confusion, mistake, or deception as to the source or affiliation of Defendants' works. Specifically, Defendants' use is likely to cause attendees, purchasers, or others to mistakenly believe that the artwork displayed, offered for sale, and sold at, through, or as a result of Defendants' show are original to Keith Haring.

34. Defendants' use of the marks KEITH HARING and multiple other trademarks of Haring's images belonging to Plaintiff violates Plaintiff's exclusive rights in those designations and constitutes trademark infringement in violation of 15 U.S.C. § 1114 and Florida common law.

35. Defendants' use of KEITH HARING and multiple other trademarks of Haring's images belonging to Plaintiff is greatly and irreparably damaging to Plaintiff and will continue to greatly and irreparably damage Plaintiff unless restrained by this Court.  As a result, Plaintiff is without an adequate remedy at law.

36. Defendants' acts have been willful, wanton, intentional, purposeful and in deliberate disregard of Plaintiff's rights, entitling  Plaintiff to immediate and permanent injunctive relief, damages, Defendants' profits, punitive damages, reasonable attorney's fees and costs.

37.  Defendants' foregoing actions also have caused Plaintiff damages in an amount yet to be determined.

## COUNT II
### Federal False Designation of Origin and Unfair Competition – 15 U.S.C. § 1125(a)

38. Plaintiff realleges the allegations of Paragraphs 1 through 37 of this Complaint as though fully set forth herein.

39. Defendants' use of the marks KEITH HARING and multiple other indicia of Haring belonging to Plaintiff in connection with the promotion, display, offer for sale, and sale of works that do not originate with Keith Haring is likely to cause confusion, mistake, or deception as to the source or affiliation of Defendants' works.  Specifically, Defendants' use is likely to cause attendees, purchasers, or others to mistakenly believe that the artwork displayed, offered for sale, and sold at or through Defendants' show are original to Keith Haring.

40. Defendants' use of the marks KEITH HARING and multiple other trademarks of Haring's images belonging to Plaintiff violates Plaintiff's exclusive rights in those designations and constitutes false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

41. Defendants' use of KEITH HARING and multiple other trademarks of Haring's images belonging to Plaintiff is greatly and irreparably damaging to Plaintiff and will continue to greatly and irreparably damage Plaintiff unless restrained by this Court.  As a result, Plaintiff is without an adequate remedy at law.

42. Defendants' acts have been willful, wanton, intentional, purposeful and in deliberate disregard of Plaintiff's rights, entitling  Plaintiff to immediate and permanent injunctive relief, damages, Defendants' profits, punitive damages, reasonable attorney's fees and costs.

43. Defendants' foregoing actions also have caused Plaintiff damages in an amount yet to be determined.

## COUNT III
## Federal Trademark Dilution – 15 U.S.C. § 1125(c)

44. Plaintiff realleges the allegations of Paragraphs 1 through 43 of this Complaint as though fully set forth herein.

45. Through widespread use and world renown, the KEITH HARING and multiple other trademarks of Haring's images belonging to Plaintiff have become famous trademarks within the meaning of 15 U.S.C. § 1125(c).

46. Defendants' use of the marks KEITH HARING and multiple other trademarks of Haring's images belonging to Plaintiff in connection with the promotion, display, offer for sale, and sale of works that do not originate with Keith Haring is likely to dilute the distinctive quality of Plaintiff's famous trademarks in violation of 15 U.S.C. § 1125(c).

47. Defendants' use of KEITH HARING and multiple other trademarks of Haring's images belonging to Plaintiff is greatly and irreparably damaging to Plaintiff and will continue to greatly and irreparably damage Plaintiff unless restrained by this Court. As a result, Plaintiff is without an adequate remedy at law.

48. Defendants' acts have been willful, wanton, intentional, purposeful and in deliberate disregard of Plaintiff's rights, entitling Plaintiff to immediate and permanent injunctive relief, damages, Defendants' profits, punitive damages, reasonable attorney's fees and costs.

49. Defendants' foregoing actions also have caused Plaintiff damages in an amount yet to be determined.

## COUNT IV
## Federal False Advertising – 15 U.S.C. § 1125(a)

50. Plaintiff realleges the allegations of Paragraphs 1 through 49 of this Complaint as though fully set forth herein.

51. In commercial advertising, Defendants have misrepresented the nature, characteristics, qualities, or geographic origin of its goods, services, and commercial activities in violation of 15 U.S.C. § 1125(a)(1)(B).

52. Defendants' false advertising as described herein is greatly and irreparably damaging to Plaintiff and will continue to greatly and irreparably damage Plaintiff unless restrained by this Court.  As a result, Plaintiff is without an adequate remedy at law.

53. Defendants' acts have been willful, wanton, intentional, purposeful and in deliberate disregard of Plaintiff's rights, entitling  Plaintiff to immediate and permanent injunctive relief, damages, Defendants' profits, punitive damages, reasonable attorney's fees and costs.

54.  Defendants' foregoing actions also have caused Plaintiff damages in an amount yet to be determined.

## COUNT V
**Copyright Infringement- 17 U.S.C. § 101 et seq.**

55. Plaintiff realleges the allegations of Paragraphs 1 through 54 of this Complaint as though fully set forth herein.

56. Defendants acts of displaying, offering for sale, and selling works that consist of or contain copies of Keith Haring's artwork, constitute willful copyright infringement and violate Plaintiff's exclusive rights under the U.S. Copyright Act, 17 U.S.C. § 101 et seq.  In particular, Defendants have infringed Plaintiff's registered copyrights.

## COUNT VI
**Cybersquatting**

57. Plaintiff realleges the allegations of Paragraphs 1 through 56 of this Complaint as though fully set forth herein.

58. HARING is the personal name of Keith Haring, and a distinctive trademark owned by Plaintiff.

59. By wrongfully registering and using the domain name www.haringmiami.com in the manner described above, Defendants have, with a bad faith intent to profit, registered and used a domain name that is identical to and confusingly similar to the HARING trademark.

60. Defendants' actions constitute cybersquatting in violation of 115 U.S.C. § 1125(d).

61. Defendants' registration and use of the www.haringmiami.com domain name is greatly and irreparably damaging to Plaintiff and will continue to greatly and irreparably damage Plaintiff unless this Court orders the transfer of the domain name to Plaintiff.  As a result, Plaintiff is without an adequate remedy at law.

62. Defendants' acts have been willful, wanton, intentional, purposeful and in deliberate disregard of Plaintiff's rights, entitling Plaintiff to immediate and permanent injunctive relief, damages, Defendants' profits, punitive damages, reasonable attorney's fees, and costs.

### **Prayer for Relief**

WHEREFORE, Plaintiff respectfully prays for Judgment to be entered against Defendants as follows:

A. Temporarily and preliminarily, during the pendency of this action, and permanently, restraining and enjoining Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice thereof, jointly and severally:

    i. from advertising, displaying, selling, or offering for sale any works that were not created by Keith Haring but bear any indicia of Keith Haring, such as the KEITH HARING signature, or any of other trademarks belonging to Plaintiff;

    ii. from using on or in connection with any product or service or the sale, offering for sale, distribution, advertising, or promotion of any product or service, or from using for any commercial purpose whatsoever, any false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the minds of the public or to deceive the public into the belief that works that are not original Keith Haring artworks are original Keith Haring artworks;

    iii. from directly or indirectly reproducing, adapting, distributing, publicly displaying, transmitting, offering, advertising, marketing or otherwise exploiting, by any means, any material or product, in any form, bearing any unauthorized reproduction, imitation or simulation, in whole or in part, of any of Plaintiff's copyrighted works (whether now in existence or hereafter created), including but not limited the works covered by the Certificates of Registration referred to above;

    iv. from causing, engaging in or permitting others to do any of the aforesaid acts;

 B. Temporarily and preliminarily, during the pendency of this action, and permanently, impound the infringing works pursuant to 17 U.S.C. § 503(a);

 C. That Defendants be required to deliver to Plaintiff for destruction, all works that violate Plaintiff's trademark rights as described herein pursuant to 15 U.S.C. § 1118;

 D. Directing Defendants to file with the Court and serve upon counsel for Plaintiffs, within thirty (30) days after entry of any temporary, preliminary, or permanent injunction issued by the Court in this action, a sworn written statement as provided in 15 U.S.C. § 1116 setting forth in detail the manner and form in which Defendants have complied with the injunction;

  E. Requiring Defendants and/or the registrars of the domain name www.haringmiami.com to immediately transfer the domain name to Plaintiff or its designee;

  F. That Defendants account to Plaintiff for all gains, profits and advantages derived from Defendants' wrongful acts;

  G. That Plaintiff recover from Defendants all Defendants' profits and all damages, including lost profits, sustained by Plaintiff as a result of Defendants' wrongful acts, and such other compensatory damages as the Court determines to be fair and appropriate, pursuant to 15 U.S.C. § 1117(a) and 17 U.S.C. § 504;

  H. That, if elected by Plaintiff, Plaintiff recover from Defendants statutory damages pursuant to 17 U.S.C. § 504;

  I. That Plaintiff recover its costs and attorneys fees relating to this action from Defendants;

  J. That Plaintiff recover from Defendants three times the amount of Defendants' profits or Plaintiff's damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b); and

  K. Granting Plaintiffs such other and further relief as the Court may deem just and proper.

  Plaintiff demands a jury on all issues so triable.

Dated:  March 8, 2013        Respectfully submitted,

                **PROSKAUER ROSE LLP**
                *Attorneys for Plaintiff*
                2255 Glades Road, Suite 421 Atrium
                Boca Raton, Florida  33431
                Telephone: (561) 241-7400
                Facsimile: (561) 241-7145

                /s Jonathan Galler
                Matthew Triggs

        Florida Bar No. 0865745
        mtriggs@proskauer.com
        Jonathan Galler
        Florida Bar No. 0037489
        jgaller@proskauer.com

        -and-

        Sarah S. Gold
        (*pro hac vice* motion to be submitted)
        Margaret A. Dale
        (*pro hac vice* motion to be submitted)
        PROSKAUER ROSE LLP
        11 Times Square
        New York, NY 10036
        Telephone:    (212) 969-3000
        Facsimile:    (212) 969-2900